**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

_____

MICHAEL ELLENBURG                    Cause No. CV 04-62-M-DWM

        Petitioner,

    vs.                              FINDINGS AND RECOMMENDATION
                                     OF U.S. MAGISTRATE JUDGE
MIKE MAHONEY,

        Respondent.

        _____

MICHAEL ELLENBURG                    Cause No. CV 04-116-M-DWM

        Petitioner,

    vs.                              FINDINGS AND RECOMMENDATION
                                     OF U.S. MAGISTRATE JUDGE
MIKE MAHONEY,

        Respondent.

        _____

    Pending before the Court in these consolidated actions is
the Amended Petition of Michael Ellenburg for a writ of habeas
corpus pursuant to 28 U.S.C. § 2254.  The Petitioner is
challenging the 1999 forgery and theft convictions entered
against him in the Montana Fourth Judicial District Court.

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE  - PAGE 1

Having reviewed the documents in the file and the Montana Supreme Court's ruling, the Court enters the following:

## RECOMMENDATION

The Petitioner's speedy trial and due process habeas claims identified by the Court as claims (2) and (9) should be **DENIED.** This action should be **DISMISSED** as fully resolved, and the Court should **DENY** a certificate of appealability.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

The Clerk of Court shall serve a copy of this Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636(b)(1), they have the right to file written objections to this Findings and Recommendation.  Any objections to the Findings and Recommendation must be filed with the Clerk of Court within twenty (20) days after the date this Findings and Recommendation is signed, or objection is waived.

DATED this ___8th___ day of February, 2007.


                              /s/ Jeremiah C. Lynch
                              Jeremiah C. Lynch
                              United States Magistrate Judge


## RATIONALE

## I.   BACKGROUND AND PETITIONER'S HABEAS CLAIMS

The history of the proceedings in this federal case is sufficiently set forth in the record and in the Court's previous

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE  - PAGE 2

rulings.  In light of Chief Judge Donald W. Molloy's January 24, 2007 Order dismissing 15 of the Petitioner's 17 habeas claims there remain only 2 claims for habeas relief which are ripe for review on their merits.

The Court previously reviewed the Amended Petition and on July 14, 2005, issued an Order identifying and summarizing the habeas claims remaining in this case.[1]  The two surviving claims, numbered (2) and (9) in that Order, are paraphrased as follows:

(2) an alleged violation of speedy trial rights because 616 days elapsed from the original date of incarceration to a final decision being made in district court [...]; [and...]

(9) a due process claim that the prosecution suppressed evidence which was favorable to petitioner and material [to his defense.][2]

Rule 4 of the Rules Governing Section 2254 Cases permits the Court to conduct a preliminary review of the merits of a habeas claim, and provides for summary dismissal of a habeas petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court[.]"  In accordance with Rule 4 the Court will review claims (2) and (9) to determine if dismissal is warrant under Rule 4.

---

[1]July 14, 2005 Order at 5-8.

[2]*Id*. at 6-7.

## II.  PETITIONER'S CRIMINAL PROSECUTION

This habeas petition stems from the State of Montana's criminal prosecution of the Petitioner in 1997 through 1999.  In 1996 the Petitioner was serving a sentence of incarceration at the Montana State Prison following his conviction for driving a vehicle under the influence of alcohol.  *State of Montana v. Ellenburg*, 2000 MT 232, ¶ 5, 301 Mont. 289 ¶ 5.  He was released to the State's Intensive Supervision Program in December 1996.

The Petitioner was a licensed insurance agent, and in April 1997, the State began an investigation regarding potential crimes related to his insurance agency business.  *Ellenburg*, ¶ 6.  In connection with that investigation, the State discovered the Petitioner had violated the conditions of his supervised release and the Petitioner was arrested on June 13, 1997, for those violations.  *Id*. ¶ 7-8.  As a result of the investigation, the State charged the Petitioner on October 14, 1997, with felony theft, felony forgery, and elder abuse.  *Id*. ¶ 10.  On February 18, 1999, the Petitioner pled guilty to two counts of theft and one count of forgery.  *Id*. ¶ 12.

## III. DISCUSSION

### A.  Applicable Law - 28 U.S.C. § 2254(d)

This case is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) at 28 U.S.C. § 2254.  The AEDPA at §

2254(d) "modifies the role of federal habeas courts in reviewing" habeas petitions. *Williams v. Taylor*, 529 U.S. 362, 403 (2000) (O'Connor, J., concurring).  Following the AEDPA's enactment, 28 U.S.C. § 2254(d) now reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) shifts a federal court's focus from a consideration of the merits of the habeas corpus claims to a review of the state court's rulings on those claims.  "The Supreme Court has [made clear] that § 2254(d)(1) imposes a 'highly deferential standard for evaluating state-court rulings,' [...] and 'demands that state court decisions be given the benefit of the doubt.'" *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003) (citing *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2003) (per curiam)).  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (noting the importance of the deference to which state court rulings are entitled under § 2254(d)(1)).

The "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have independent meanings.  The United States Supreme Court has described the "contrary to" standard as follows:

> A state court's decision is "contrary to" federal law if the state court (1) "applies a rule that contradicts the governing law" set forth in Supreme Court case authority or (2) applies controlling law to a set of facts that are "materially indistinguishable" from a Supreme Court decision but nevertheless reaches a different result.

*Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1169 (9th Cir. 2003) (quoting *Lockyer*, 538 U.S. at 73).

Habeas relief is also available for an "unreasonable application" of Supreme Court law "if the state court correctly identifies the governing legal principle [...] but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  *See also Williams v. Taylor*, 529 U.S. 362, 404 (2000) (further describing circumstances of unreasonable applications).  An "unreasonable application" of federal law must be "objectively unreasonable," which "requires the state court decision to be more than incorrect or erroneous." *Ortiz-Sandoval*, 323 F.3d at 1169-1170 (quoting *Lockyer*, 538 U.S. at 75, and *Bell*, 535 U.S. at 694).  Restated, an unreasonable application is more than "clear error". *Lockyer*, 538 U.S. at 75.

It is the habeas petitioner's burden to establish he is not precluded from habeas relief by § 2254(d). *Woodford v.*

*Visciotti*, 537 U.S. 19, 25 (2002).

With regard to factual issues, habeas relief can only be granted if the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Some factual determinations may be so clearly incorrect that they are not debatable among reasonable jurists, but "[a]s to more debatable factual determinations, 'the care with which the state court considered the subject' may be important.  [*Lindh v. Murphy*, 96 F.3d 856, 871 (7th Cir. 1996).]" *Jeffries v. Wood*, 114 F.3d 1484, 1500 (9th Cir. 1997) (en banc), *cert. denied* 522 U.S. 1008 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320.  Further, the AEDPA directs that factual findings of the state court be granted a presumption of correctness that can only be rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Jeffries*, 114 F.3d at 1499-1500.

## B.   Speedy Trial Claim

The Petitioner alleges the state court violated his right to a speedy trial during his prosecution.  Petitioner alleges he made it "perfectly clear to the court, there would be no waiver of speedy trial[.]"[3]  He contends he was not required to

---

[3]Petition at 5 (April 6, 2004).

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE  - PAGE 7

continually renew his right to a speedy trial each time some delay came up during the proceedings.  He states the trial court had the "first and last say to every docket time record, consequently the court is responsible for the times set."[4]  The Petition alleges 616 days elapsed from the date of his arrest and incarceration, to the date of the trial court's final decision.

The Sixth Amendment to the U.S. Constitution guarantees an accused the right to a speedy trial.  *Klopfer v. State of North Carolina*, 386 U.S. 213, 222-23 (1967).  To determine whether a speedy trial violation has occurred the United States Supreme Court has established a flexible balancing test, identifying four factors the courts must weigh: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  None of the four factors are

> either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant. [... the] factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Barker*, 407 U.S. at 533.

## 1.   Length of Delay

The United States Supreme Court has described the first

---

[4]*Id*.

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE  - PAGE 8

factor, the length of the delay, as a triggering mechanism. *Barker*, at 530. *See Doggett v. U.S.*, 505 U.S. 647, 651-52 (1992). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, at 530. The length of the delay must cross "the threshold dividing ordinary from 'presumptively prejudicial' delay" because there is a certain amount of acceptable delay inherent in the process of prosecuting an accused. *Doggett*, 505 U.S. at 652, 656.

The Montana Supreme Court considered this first factor and resolved it in the Petitioner's favor. The Court found there were 492 days of delay from the date the Information was filed against the Petitioner until he pled guilty on February 18, 1999. *State of Montana v. Ellenburg*, 2000 MT 232, ¶ 17, 301 Mont. 289 ¶ 17. The Court concluded such delay was sufficient to trigger further speedy trial analysis. *Id*.

The Petitioner suggests the length of delay was actually 616 days, which includes 123 days of pre-indictment delay beginning on the day he was arrested on June 13, 1997. However, at the time of his arrest the Petitioner was on supervised release from the Montana State Prison based on his DUI conviction, and he was arrested based on violations of his conditions of such release. *Ellenburg*, ¶¶ 5, 7-8. Although the Petitioner's supervising officer discovered such violations while investigating

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE  - PAGE 9

allegations of financial crimes the Petitioner may have committed, he was not arrested for those alleged crimes; he was instead arrested for the violations of his conditions of release. *Id*. ¶¶ 7-8, 35.

The speedy trial right has no application until the criminal defendant has become an "accused", typically upon the filing of formal charges.  *U.S. v. Marion*, 404 U.S. 307, 313, 321 (1971). Despite his June 13, 1997 arrest, formal charges "accusing" him of the crimes at issue in this case were not filed until October 14, 1997.  *Ellenburg*, ¶ 10.  Therefore, the Montana Supreme Court properly used October 14, 1997, as the date triggering the speedy trial clock.

Even if an accused establishes the length of the delay was "presumptively prejudicial" thereby triggering further speedy trial analysis, such delay may not be sufficient, by itself, to establish a speedy trial violation when all the other factors are weighed.  *See Doggett*, 505 U.S. at 652 n.1; *Barker*, 407 U.S. at 533.  Therefore, the Court must consider the remaining factors.

## 2.   Reason for the Delay

The second factor requires a court to consider the reasons for the delay.  Different reasons carry different weight in the balancing test.  If the government deliberately attempts to delay a trial in bad faith to hamper the defense, then the reason for

the delay should be weighed against the government. *Barker*, 407
U.S. at 531.  If the government merely acted negligently in
proceeding with the prosecution, or if the courts are
overcrowded, then the reason for delay is weighed less heavily
against the government, but the government still carries the
ultimate responsibility for bringing an accused to trial.  *Id.*
Finally, there may exist valid reasons for delaying a trial which
justify the delay.  *Id.*

In its consideration of the Petitioner's speedy trial claim,
the Montana Supreme Court recognized the different weights the
particular reasons for delay carry.  *Ellenburg*, ¶ 18.  The Court
proceeded to attribute various periods of delays in the
Petitioner's prosecution to either the State of Montana or to the
Petitioner.  *Id.* ¶¶ 20-32.  It concluded that 220 days of the
delay were attributable to the State, and the balance of 272 days
was attributable to the Petitioner.  *Id.* ¶¶ 20-21, 32.
Therefore, it weighed this factor against the Petitioner.  *Id.* ¶
32.

The Petitioner has submitted a brief in which he argues all
492 days are attributable to the State.[5]  However, considerable

---

[5]Aff. of Petitioner (November 3, 2004), "Section 4#" at 11-
19.

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE  - PAGE 11

deference is given to the state court's factual determinations,[6] and those factual determinations are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Upon review of the Petitioner's brief, the Court finds he merely rehashes his arguments for weighing and attributing various periods of delay to the State.  The Petitioner has not presented any clear and convincing evidence to rebut the presumption of correctness to which the Montana Supreme Court's factual determinations are entitled.  The Montana Supreme Court meticulously considered various disputed periods of delay in the Petitioner's prosecution and found 272 days of delay were caused by the Petitioner.  *Ellenburg*, ¶¶ 21-32.  Upon review of the Montana Supreme Court's determinations, this Court cannot say the weight it applied to various periods of delay, and its rulings on those delays, are either contrary to, or an unreasonable application of United States Supreme Court law.

The Court notes the Petitioner takes separate issue with the Montana Supreme Court's determination attributing delay from November 12, 1998, to February 18, 1999, to the Petitioner.  The Court's decision was grounded on the fact his attorney did not object to the trial court's decision to attribute that period of

---

[6]Even on an appellate court's review of the merits of a Sixth Amendment speedy trial claim deference is given to the lower court's factual determinations as to the reasons for the various delays.  *Doggett*, 505 U.S. at 652.

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE   - PAGE 12

time to the Petitioner, and constituted a waiver of the right to
challenge that decision on appeal. *Ellenburg*, ¶ 28-31.  In his
June 27, 2006 "Motion to Avoid a Gross Miscarriage of Justice",
the Petitioner contends his attorney's failure to raise the
objection constituted ineffective assistance of counsel.
However, the Petitioner raised that issue as an independent
ground for habeas relief in this action,[7] and Chief Judge Donald
W. Molloy dismissed that claim on January 24, 2007.  Therefore,
the Court will not consider the Petitioner's argument on this
specific issue.

### 3.   Assertion of Right to a Speedy Trial

As to the third factor, there is no dispute the Petitioner
asserted his right to a speedy trial, at the latest, by November
17, 1998, if not earlier, when he filed a motion to dismiss based
on his speedy trial right. *Ellenburg*, ¶ 12.  It is a defendant's
responsibility to assert his or her speedy trial right, and the
defendant's assertion of the right "is entitled to strong
evidentiary weight in determining whether the defendant is being
deprived of the right." *Barker*, 407 U.S. at 531-32.  Although
the Petitioner contends he asserted his right to a speedy trial
"early on" in his prosecution prior to November 17, 1998, the
Montana Supreme Court did not ultimately weigh this factor

---

[7]July 14, 2005 Order at 7.

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE  - PAGE 13

against the Petitioner.

### 4. Prejudice

The fourth factor, prejudice to the defendant, is to be

assessed in the light of the interests of defendants which
the speedy trial right was designed to protect.  This Court
has identified three such interests: (i) to prevent
oppressive pretrial incarceration; (ii) to minimize anxiety
and concern of the accused; and (iii) to limit the
possibility that the defense will be impaired.  Of these,
the most serious is the last, because the inability of a
defendant adequately to prepare his case skews the fairness
of the entire system.

*Barker*, 407 U.S. 532.

### a. Pretrial Incarceration

The Montana Supreme Court took into account the three

prejudicial interests identified in *Barker* and extensively

considered any prejudice the Petitioner claimed he suffered as a

result of the delay in his prosecution.  *Ellenburg*, ¶¶ 32-44.

The Court first considered the issue of the Petitioner's pretrial

incarceration.  The Court found the Petitioner was incarcerated

as a result of the prior DUI conviction and his violation of his

conditions of supervised release.  *Id*. ¶ 35.  On October 2, 1997,

the Montana Board of Pardons and Parole advised the Petitioner he

would not be eligible for release again until January 30, 1998.

*Id*.  However, on January 21, 1998, the Board informed the

Petitioner he could not be released prior to the adjudication of

the new criminal charges filed October 14, 1997.  *Id*.  Because of

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE  - PAGE 14

the Petitioner's misconduct he was not scheduled for release on the DUI conviction until March 1999, but he pled guilty to the new criminal charges on February 18, 1999.  *Id*. at ¶ 36.  The Montana Supreme Court concluded the Petitioner was subject to pretrial incarceration because of the prior DUI conviction and related release violations, not the new criminal charges.  *Id*. at 37.  Therefore, he was not subject to oppressive pretrial incarceration.  *Id*.

Again, these factual determinations are presumed correct. The Petitioner has not offered any clear and convincing evidence to rebut these determinations.

## b.   Anxiety or Concern

The Montana Supreme Court next considered the Petitioner's issues of anxiety or concern.  The Court noted there is a certain amount of anxiety and concern inherent in a criminal prosecution. However, the Court concluded the anxiety and concern the Petitioner experienced was caused by his own misconduct that kept him in pretrial incarceration, not by any delay in his prosecution.  *Ellenburg*, ¶ 40.

The Petitioner simply contends he suffered anxiety and concern as demonstrated by the psychiatric care he received for depression, which required administration of "dangerous anti-

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE  - PAGE 15

depressant drugs plus psycho tropic drugs for insomnia."[8]
However, he does not present any clear and convincing evidence to
contradict the Montana Supreme Court's conclusion that his
anxiety was caused by his own misconduct which placed him in
incarceration, rather than the delay in his prosecution.

**c.    Impairment to Defense**

Although some affirmative showing of prejudice is generally
necessary, it is not essential in every speedy trial claim
asserting prejudice under the third interest stated above, i.e.
the impairment to a defendant's defense. *Doggett*, 505 U.S. at
655.  Under certain circumstances, an excessive delay can
presumptively prejudice the defense and the reliability of a
trial, but such presumption, by itself, cannot support a speedy
trial claim.  *Id*. at 655-56.

The extent of prejudice which must be demonstrated depends
on the circumstances of the case.  In situations where delays are
valid and justifiable during the course of the government's
diligent prosecution of a case, a defendant must show specific
prejudice to his defense.  *Doggett*, 505 U.S. at 656.  In
contrast, if the government acted in bad faith to delay a trial
to gain a tactical advantage then such delay, without regard to
any prejudice to the defendant, would warrant a dismissal of the

_____

[8]Aff. of Petitioner (November 3, 2004), "Section 5#" at 18.

charges.  *Id*.  Between the ends of this continuum are situations
of governmental negligence causing delays, but which are still
attributable to the State.   In those situations, the requirement
that a defendant demonstrate prejudice to his defense diminishes,
and the presumption of prejudice increases as the negligent delay
increases.  *Id*. at 657.

The Montana Supreme Court considered whether the delay
caused any impairment to the Petitioner's defense.  The Court
considered the claim that his incarceration deprived him of
access to his exculpatory business records.  It also considered
his contention that he was prejudiced by the State's "probable
loss or destruction of documents seized from his office."
*Ellenburg*, ¶ 41.  The Court concluded there was no prejudice to
the Petitioner because he had not described the exculpatory
nature of the documents or business records, and he did not
explain why some other person could not search his business
records on his behalf.  *Id*. ¶¶ 42-43.

In this action the Petitioner again suggests the missing and
unavailable documents contained exculpatory evidence.  However,
as in his direct appeal to the Montana Supreme Court, Petitioner
does not describe the exculpatory evidence contained in the
documents.  He makes no effort to explain what evidentiary value

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE  - PAGE 17

the documents had to his defense.[9]

Again, as the length of the delay caused by the government increases, so does the presumption of prejudice to a defendant. However, "to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." *Doggett*, 505 U.S. at 657.  Here, the Petitioner has not identified, with particularity, the prejudice to his defense.  Absent demonstrable prejudice, the 220 days of delay attributed to the State, considering the Petitioner's pretrial detention was caused by his own misconduct, was not of such length that it operates to increase the presumption of prejudice warranting relief.

The Petitioner has not offered anything to rebut the presumption of correctness which attaches to the Montana Supreme Court's factual determinations.  The Court found no prejudice to the Petitioner under any of the three interests recognized as protected by the speedy trial right.  Based on the facts as found by the Montana Supreme Court, this Court concludes the Montana Supreme Court's ruling on the Petitioner's speedy trial claim was not contrary to, or an unreasonable application of United States Supreme Court law under *Barker*, *Doggett*, or any other Supreme Court case.

---

[9]Aff. of Petitioner (November 3, 2004), "Section 5#" at 19.

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE  - PAGE 18

        **C.    Due Process Claim**

     The Petitioner's due process claim alleges the State of

Montana lost or destroyed documents which contained material and

exculpatory evidence which it was required to disclose to him in

accordance with *Brady v. Maryland*, 373 U.S. 83 (1963).

Therefore, the Petitioner contends his conviction was obtained in

violation of his constitutional rights.

     The United States Supreme Court has established that

     the suppression by the prosecution of evidence favorable to
     an accused upon request violates due process where the
     evidence is material either to guilt or to punishment,
     irrespective of the good faith or bad faith of the
     prosecution.

*Brady*, 373 U.S. at 87.  The evidence must be materially favorable

to the accused.  *Youngblood v. West Virginia*, ___ U.S. ___, 126

S. Ct. 2188, 2190 (2006).  To constitute material evidence, there

must be "a reasonable probability that, had the evidence been

disclosed to the defense, the result of the proceeding would have

been different."  *Id*. (quoting *Strickler v. Greene*, 527 U.S. 263,

280 (1999).  In other words, a petitioner must show that "the

favorable evidence could reasonably be taken to put the whole

case in such a different light as to undermine confidence in the

verdict."  *Id*. (quoting *Kyles v. Whitley*, 514 U.S. 419, 435

(1995)).

     With regard to a duty to preserve *Brady* evidence, the United

States Supreme Court has imposed some limitations on the

prosecution's obligations.  The duty to preserve evidence is

limited to evidence that is

> expected to play a significant role in the suspect's
> defense.  To meet this standard of constitutional
> materiality, [...] evidence must both possess an exculpatory
> value that was apparent before the evidence was destroyed,
> and be of such a nature that the defendant would be unable
> to obtain comparable evidence by other reasonably available
> means.

*California v. Trombetta*, 467 U.S. 479, 488-89 (1984).

The Montana Supreme Court quoted and applied the rules set

forth in *Brady* and *California* to Petitioner's claim of lost or

destroyed evidence.  The Court first addressed a missing letter

which accompanied a blank check Harold Gunlock signed.  The

Petitioner asserted the letter authorized him to use the check

for additional insurance premiums.  Pursuant to *California*,

however, the Court concluded the letter did not support a *Brady*

violation because the Petitioner could have obtained comparable

evidence by other available means, specifically the testimony of

Harold Gunlock.  *Ellenburg*, ¶ 53-54.  Additionally, the Court

found the letter was not relevant to the charges against the

Petitioner.  *Id*. ¶ 54.

The Montana Supreme Court next considered other lost

documents consisting of a power of attorney from Kenneth Gunlock,

a prospectus from the Fidelity Alliance Company, and Fidelity's

bankruptcy records.  With regard to those documents, the Court

concluded the Petitioner did not show he was unable to obtain comparable evidence by other reasonably available means. *Ellenburg*, ¶ 57.

Again, the Montana Supreme Court's factual determinations regarding this *Brady* claim are presumed correct under 28 U.S.C. § 2254(e)(1).  In reviewing the Petitioner's briefs, the Court finds he has not presented any clear and convincing evidence to rebut this presumption of correctness.

The Montana Supreme Court directly applied *Brady* and *California* to the Petitioner's due process claim arising from the loss of allegedly exculpatory evidence.  The Court concludes the Montana Supreme Court's ruling on the due process claim is not contrary to, or an unreasonable application of United States Supreme Court law.

## D.   Certificate of Appealability

A habeas petitioner cannot appeal a district court's denial of a habeas petition unless the court issues a certificate of appealability (COA).  28 U.S.C. § 2253(c)(1).  *See also* Fed. R. App. P. 22(b).  "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(1).  *See Hohn v. United  States*, 524 U.S. 236 (1998); *Lambright v. Stewart*, 220 F.3d 1022, 1024 (9th Cir. 2000).  The standard of a

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE  - PAGE 21

"substantial showing" can be satisfied on an issue-by-issue
basis.  *Lambright*, 220 F.3d at 1024 (citing 28 U.S.C. §
2253(c)(3)).

> [I]n order to make a substantial showing of the denial
> of a federal right a petitioner ... "must demonstrate
> that the issues are debatable among jurists of reason;
> that a court could resolve the issues [in a different
> manner]; or that the questions are 'adequate to deserve
> encouragement to proceed further.'"

*Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (quoting *Barefoot v.
Estelle*, 463 U.S. 880, 893 n.4 (1983)).  *See also Slack v.
McDaniel*, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate
that reasonable jurists would find the district court's
assessment of the constitutional claims debatable or wrong.").
Thus, a petitioner may obtain a COA even if he does not establish
that he will prevail on the merits.  The COA inquiry seeks only
to prevent frivolous appeals from wasting judicial resources,
while still affording petitioners an opportunity to show
potential for merit.  *Lambright*, 220 F.3d at 1025.  Any doubt as
to whether a petitioner has met the standard is resolved in his
favor.  *Id*.

Finally, the COA must indicate which issues satisfy the
required showing, 28 U.S.C. § 2253(c)(3), and the Court must
"state why a certificate should *not* issue."  Fed. R. App. P.
22(b)(1) (emphasis added).  The Court need not explain why a
certificate *should* issue.  *Id*.

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE  - PAGE 22

Upon consideration of the Petitioner's habeas claims under the § 2254(d) framework above, and for the reasons stated in this Court's analysis above it cannot conclude the speedy trial and due process claims are debatable among jurists of reason.  The Petitioner has not made a substantial showing of a violation of his rights, and the Court does not find that another court could resolve the issues in a different manner.  The Court finds no reason to believe the issues are adequate to deserve encouragement to proceed further.

## IV.   CONCLUSION

The Petitioner's habeas claims are controlled by the standards of review set forth in 28 U.S.C. § 2254(d).  The Montana Supreme Court's rulings on the Petitioner's speedy trial and due process claims are not contrary to, or an unreasonable application of United States Supreme Court law, and his habeas petition should be denied.  The Court should also deny a COA.

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE  - PAGE 23